THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 John F. Seibert and Lillian D. Seibert, Respondents,
 
 
 

v.

 
 
 
 R. Ann Wilkins Brooks; Charles J. Brooks, II, Niles Brancati, Brancati Builders, Inc., Charles E. Strickland, Jr., and Preferred Home Inspections, Inc., Defendants,
 
 
 

 
 
 
 of whom Charles E. Strickland, Jr. and Preferred Home Inspections, Inc., are Appellants.
 
 
 

Appeal From Lexington County
 Marc H. Westbrook, Circuit Court Judge

Unpublished Opinion No. 2006-UP-071
Heard January 10, 2006  Filed February 2, 2006    

AFFIRMED

 
 
 
 Charles E. Carpenter, Jr., and Francis M. Mack, of Columbia, for Appellants. 
 John D. Kassel, and William D. Robertson, III, of Columbia, for Respondents. 
 
 
 

PER CURIAM:  Charles E. Strickland and Preferred Home Inspections, Inc. (collectively Strickland) appeal from the circuit court order denying their motion to compel arbitration.  We affirm.  
FACTS
John and Lillian Seibert lived in Wilton, Connecticut, prior to February of 2000.  On February 1, 2000, John Seibert moved to South Carolina and took a job with Capital City Insurance.  Capital City Insurance is located in Columbia, South Carolina.  In November of 1999, the Seibert family came to Columbia to see if [they] wanted to make this move.  Seibert decided to take the job, and he and his wife contacted a real estate agent to find a house.  John Seibert moved from Connecticut into an apartment in the Columbia area for a short time.  The Seiberts bought a home in Lexington County and Lillian joined John shortly thereafter.  
In connection with the real estate transaction, and prior to closing, John Seibert contracted with Strickland to perform a home inspection.  Stricklands company is located in Richland County, South Carolina.  The home inspection agreement contained an arbitration provision.  
Strickland performed the inspection on April 18, 2000.  After completing the inspection, he handed the report to John and Lillian, who were both at the site with him.  The report was also faxed and mailed to the residence in Connecticut.  Seibert paid for the inspection with a check drawn on a Connecticut bank.  
The underlying dispute in this case arose from the Seiberts purchase of the home in Lexington County, which was clad with synthetic stucco siding.  John and Lillian Seibert filed an action against Strickland and other defendants on May 21, 2001.  The centerpiece of the Seiberts suit involves a myriad of alleged problems associated with the synthetic stucco exterior.  
Strickland and Preferred Home Inspections moved to dismiss the Complaint and to compel arbitration.  It is undisputed that the arbitration provision is unenforceable under South Carolina law because the provision was not capitalized or prominently rubber-stamped on the contract, and thus fails to meet the requirements of section 15-48-10(a) of the South Carolina Code (2005).  See Blanton v. Stathos, 351 S.C. 534, 538-39, 570 S.E.2d 565, 567 (Ct. App. 2002).  Arbitration was therefore sought pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 to 16 (2003), on the basis that the home inspection agreement evidenced a transaction involving interstate commerce.  The circuit court denied the motion to compel arbitration, finding insufficient evidence of interstate commerce to invoke the federal act.  This appeal follows. 
STANDARD OF REVIEW
The question of the arbitrability of a claim is an issue for judicial determination, unless the parties provide otherwise.  Stokes v. Metro. Life Ins. Co., 351 S.C. 606, 609, 571 S.E.2d 711, 713 (Ct. App. 2002) (quoting Zabinski v. Bright Acres Assocs., 346 S.C. 580, 596, 553 S.E.2d 110, 118 (2001)).  Determinations of arbitrability are subject to de novo review.  Id.  
LAW/ANALYSIS
Strickland contends the circuit court erred in finding the arbitration provision unenforceable because the transaction did not involve interstate commerce, and therefore did not trigger the FAA.  We disagree.  
It is undisputed that the arbitration provision in this case is unenforceable under South Carolina law.  Nevertheless, because of the policy favoring arbitration, an arbitration provision may be enforceable under the FAA.  Soil Remediation Co. v. Nu-Way Envtl., Inc., 323 S.C. 454, 458, 476 S.E.2d 149, 151 (1996).  For the Federal Act to apply, the commerce involved in the contract must be interstate or foreign.  Id. at 460, 476 S.E.2d at 152.  The scope of the FAA is coextensive with the broadest permissible exercise of the federal Commerce Clause power.  Towles v. United Healthcare Corp., 338 S.C. 29, 36, 524 S.E.2d 839, 843 (Ct. App. 1999); see also 9 U.S.C. § 2, U.S. Const. art. I, § 8, cl. 3.  In all cases, determination of whether a transaction involves interstate commerce depends on the facts of the case.  Thornton v. Trident Med. Ctr., L.L.C., 357 S.C. 91, 95-96, 592 S.E.2d 50, 52 (Ct. App. 2003).  
To ascertain whether a transaction involves commerce within the meaning of the FAA, the court must examine the agreement, the complaint, and the surrounding facts.  Towles, 338 S.C. at 36, 524 S.E.2d at 843.  This determination is made irrespective of whether the parties contemplated an interstate transaction.  Munoz v. Green Tree Fin. Corp., 343 S.C. 531, 538-39, 542 S.E.2d 360, 363 (2001).  The court should focus on what the terms of the contract specifically require for its performance, looking to the essential character of the contract.  Thornton, 357 S.C. at 96, 592 S.E.2d at 52.   
Strickland first argues the transaction involves interstate commerce because the parties are domiciled in different states.  We begin by noting that the Seiberts alleged they were residents of Lexington County in their complaint.  Residence is a question of fact and is generally determined by a partys intent.  Ferguson v. Employers Mut. Cas. Co., 254 S.C. 235, 238, 174 S.E.2d 768, 769 (1970).  The act and intent as to domicile, not the duration of the residence, are the determining factors.  Id. at 238-39, 149 S.E.2d at 769.  
Because only John Seibert signed the inspection contract, we need not consider Lillians domicile.  At the time John Seibert signed the contract, he had accepted a job in South Carolina and had been living in an apartment in South Carolina for two months.  The inspection contract related to the purchase of a home, indicating that John Seibert intended his residence to be in South Carolina.  
Moreover, the mere fact that the parties to a contract are from different states is not alone sufficient to trigger the FAA.  See, e.g., Timms v. Greene, 310 S.C. 469, 473, 427 S.E.2d 642, 644 (1993) (holding that although one of the parties was domiciled in Delaware, the contract itself did not involve interstate commerce).  Contracts involving the sale of real estate have been held not to trigger the FAA when, despite the fact that the contracting parties were domiciled outside this state, there was no nexus between the contract and interstate commerce.  Soil Remediation Co., 323 S.C. at 460, 476 S.E.2d at 152 (citing Matthews v. Fluor Corp., 312 S.C. 404, 440 S.E.2d 880 (1994).  Accordingly, something more than the domicile of the parties is required to involve interstate commerce.[1]  
Strickland next attempts to rely on the fact that the Seiberts check to pay for the inspection was drawn on an out-of-state bank, and that a copy of the report was sent to the Seiberts Connecticut residence.  We find these facts insufficient to establish a nexus between the contract and interstate commerce.  The focus of the determination is on what the terms of the contract specifically require for performance, looking to its essential character.  Thornton, 357 S.C. at 96, 592 S.E.2d at 52.  Performance of the contract must require activity involving interstate commerce.  Id. at 97, 592 S.E.2d at 53.  Factors involving interstate commerce that are only incidental to the nature of the contract need not be considered.[2]  Id. at 96, 592 S.E.2d at 52.  
Here, performance of the contract did not require any activity outside of this state.  The location of the bank on which the check was drawn is merely incidental to the nature of the contract.  Moreover, the mere fact that copies of the report were sent to Connecticut is of no account because the original report was delivered to the Seiberts in South Carolina.  We therefore find no error in the circuit courts determination that the transaction was essentially a local one lacking a sufficient nexus to interstate commerce to trigger the FAA.  The denial of the motion to compel arbitration is   
AFFIRMED. 
STILWELL, KITTREDGE, and WILLIAMS, JJ., concur.  

[1] The cases Strickland cites for the proposition that citizenship in different states is sufficient all involve contracts that required some form of interstate transfer to be performed.  See, e.g., Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 401, (1967) (contract related to acquisition of a multi-state paint business); Ideal Unlimited Servs. Corp. v. Swift-Eckrich, Inc., 727 F.Supp. 75, 77 (D.P.R. 1989) (contract involved shipment of goods across state lines).  Although some federal cases seem to suggest that mere diversity of citizenship is sufficient, that rule has not been adopted in the Fourth Circuit.  
[2] Munoz, which arguably could be read to hold that mere domicile in different states is sufficient, does not require this construction because the contract in Munoz was an installment contract and security agreement secured by a home mortgage to finance a home improvement project.  Thus, performance of the project required interstate transfer of both payments and building materials.  Munoz, 343 S.C. at 536, 542 S.E.2d at 362.